IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESTER LEVENSON, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) 2:15-CV-01461-TFM |
| | ) |
| ZEP, INC., | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6), (ECF No. 17) with brief in support. (ECF No. 18). Plaintiff has filed a Memorandum in Response (ECF No. 20) and Defendant has filed a Reply Brief (ECF No. 21). Accordingly, the motion is ripe for disposition.

**I. Background**

    **a. Factual Background**

The following background is synthesized from Plaintiff's various pleadings, and the factual allegations therein are accepted as true for the purpose of this Memorandum Opinion.

Plaintiff asserts two counts of breach of contract, in addition to one count of wrongful termination. Plaintiff is a resident of Pennsylvania and is a former sales employee of Defendant, Zep, Inc. ("Zep" or "Defendant"). Zep is a Delaware corporation with its principal place of business in Georgia.

Plaintiff was hired on October 23, 1995 pursuant to an employment agreement entitled "Right Track I Sales Trainee Contract" ("1995 Contract"). Plaintiff attached that agreement to both the original complaint, which was filed in the Pennsylvania Court of Common Pleas,

1

Washington County on October 15, 2015, and the Amended Complaint, which was filed in this Court on June 1, 2016. The 1995 Contract provides that after a twelve (12) month training period, Plaintiff would enter into Zep's standard "Sales Representative's Exclusive Account Contract" ("The Exclusive Account Contract").[1] Further, The 1995 Contract provides that "[e]ither Trainee or Company may terminate employment under this Agreement at any time by giving the other party at least seven (7) days' prior written notice," unless the termination was for "cause." If the termination was for cause, then immediate termination would be considered appropriate under the terms of the 1995 Contract. The 1995 Contract was duly executed in the presence of two employee witnesses.

Almost twenty (20) years later, on October 1, 2014, Louise Bergen, Vice President of Human Resources for Zep, sent a letter to Plaintiff informing him that the company would be replacing Plaintiff's current contract with a new 2014 "Rep[resentative] Agreement." In the October 2014 letter, Plaintiff was advised to "consider this letter as a notice that [his] current written agreement with [Zep would] end effective December 31, 2014." Pl. Am. C. at 15. The letter was accompanied by the 2014 Representative Agreement, and the letter indicated that if Plaintiff were to accept the new agreement by signing and returning it, his "employment with the Company [would] continue uninterrupted." *Id*. The letter instructed Plaintiff that he must accept the new agreement no later than December 1, 2014, or Zep would consider Plaintiff to have resigned. *Id*.

Among other things, the new 2014 Representative Agreement, which Plaintiff received with the October 1 letter, included an "Employment at Will" clause, Pl. Am. C. at 19 ¶ 7, which

---

[1] Plaintiff mentions this agreement, for the first time, in his Response to Defendant's Motion to Dismiss the Amended Complaint. A copy of the Exclusive Account Contract has not been provided to the Court, nor has Plaintiff pled any of its terms.

indicates that by agreeing to the terms of the new Representative Agreement, "employee acknowledges and agrees that his . . . employment with Company is at all times at-will, that Employee's employment may be terminated by either Employee or Company at any time and for any reason, and that the terms and conditions of Employee's employment with Company may be changed at any time without notice." *Id.* The 2014 Representative Agreement also indicates its terms should be governed by Georgia law. *Id*. at ¶ 8. Furthermore, the Representative Agreement includes an integration clause which indicates that the Representative Agreement is a representation of the entire agreement between the parties "with respect to the subject matter of [the] Agreement and supersedes all prior written and oral agreements. . . ." Pl. Am. C. at 19 ¶ 10.

In his Amended Complaint, Plaintiff now alleges that he timely signed the 2014 Representative Agreement and sent it to Steve Nichols, Group President, Industrial Institutional, at Zep's Corporate Office on November 20, 2014.[2] However, on December 4, 2014, Steve Nichols sent Plaintiff a letter informing him that Zep had not received the signed Representative Agreement from Plaintiff, and therefore Plaintiff would be released immediately from employment. Thus, Plaintiff was terminated from employment with Zep and subsequently brought this action for breach of the 1995 Contract, or alternatively, breach of the new Representative Agreement, and wrongful termination.

   b. **Procedural Background**

On January 20, 2015, Plaintiff filed a Writ of Summons in the Court of Common Pleas of Washington County, Pennsylvania. Then, on October 15, 2015, Plaintiff filed his original complaint in that same court. On November 6, 2015, Zep filed a Notice of Removal in this Court

---

[2] Notably, Plaintiff did not argue that he had timely signed and returned the Representative Agreement until he filed his Amended Complaint. Plaintiff's original complaint only alleged that Defendant had breached the 1995 Contract, under which Plaintiff argued he was still employed.

3

pursuant to 28 U.S.C. §§ 1332 and 1441 and on November 10, 2015, this Court remanded the action to the Court of Common Pleas because of a lack of subject matter jurisdiction. It was apparent, by the terms of the complaint, that the amount in controversy would not exceed the statutory requirement of $75,000. In response to this Court's order remanding the case to state court, the parties filed a stipulation stating, without support, that the amount in controversy exceeded $75,000. The Court rejected that stipulation by Order dated April 11, 2015.

Thereafter, the parties submitted an Affidavit of Plaintiff, which sets forth his commission earnings and theory of damages, and filed a motion for reconsideration. Based on that Affidavit, the Court found that it was at least plausible that the amount in controversy exceeds the statutory requirement of $75,000, such that the Court may properly exercise jurisdiction. Thus, the Court granted the motion for reconsideration and rescinded its November 10, 2015 Order of Remand to the Court of Common Pleas of Washington County, Pennsylvania.

Plaintiff's original complaint asserted that Defendant breached the 1995 Contract. On May 11, 2016, Defendant filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), along with a brief in support. Before this Court rendered a judgment on Defendant's motion, on June 1, 2016, Plaintiff filed his Amended Complaint, which rendered Defendant's motion to dismiss the original complaint moot. In the Amended Complaint, Plaintiff asserted that Defendant breached the 1995 Contract, or in the alternative, that Plaintiff had timely accepted the 2014 Representative Agreement, and that Defendant had breached that agreement. Plaintiff attached a copy of the 2014 Representative Agreement to his Amended Complaint with his signature, dated November 20, 2014. The signature line labeled "company" – presumably for a representative of Zep – is blank.

In response to the Amended Complaint, on June 15, 2016, Defendant filed the pending Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) along with a Memorandum of Law in Support. Plaintiff filed a response, and Defendant filed a reply brief. In Plaintiff's response, he argued the existence of yet another contract – the Exclusive Account Contract – which began sometime in 1996, after the 1995 Contract ended. *See, Pl. Res. at 4.* Plaintiff concedes that he is unable to set forth the terms of that contract, but nevertheless argues that Defendant breached it. With that background, the Court will proceed to determine this motion on the merits.

## II. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, which may be dismissed for its "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Upon review of a motion to dismiss, the Court must accept all well-pleaded factual allegations as true, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), *cert. denied* 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States has made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegation must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility

standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claims and "accept the factual allegations contained in the Complaint as true, but [] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege that the plaintiff is entitled to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The determination

for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirements that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### III. Legal Analysis

Plaintiff presents alternative arguments. He contends that Defendant breached the terms of: the 1995 Contract; the terms of the 2014 Representative Agreement; and/or the 1996 Exclusive Account Contract – the terms of which are unknown. Plaintiff further brings a claim for wrongful termination.

After considering each claim in the light of the factual allegations in the Amended Complaint, the Court will dismiss each claim with prejudice for the following reasons.

1. **Breach of Contract Claims**

   a. **The 1995 Contract**

Because the 1995 Contract contains no choice of law clause, this Court will apply the laws of Pennsylvania. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

In Pennsylvania, employment contracts have generally been governed by principles of contract law that are applicable to other contractual agreements. *See generally Greene v. Oliver Realty, Inc.*, 526 A.2d 1192 (Pa. Super. Ct. 1987). A contract is enforceable when the parties reached mutual agreement, exchanged consideration and have outlined the terms of their bargain with sufficient clarity. *Id.* (citing *Com. Dept. of Transp. v. First Pennsylvania Bank, N.A.*, 466 A.2d 753 (Pa. Commw. Ct. 1983)).

Employment contracts, however, are treated differently regarding duration. If the duration of the employment is specifically delineated by its terms, that duration will be enforced; however, if there is no duration specified, the employment is presumptively at-will. *Greene*, 526 A.2d at 1195. At-will employment means that either party may terminate the agreement at any time, for any lawful reason, or for no reason. *Id; See also Betts v. Stroemann Bros.*, 512 A.2d 1280 (Pa. Super. Ct. 1986) (citing *Geary v. United States Steel Corp.*, 319 A.2d 174 (Pa. 1974)) ("Absent a specific statutory or contractual provision, an employment relationship is terminable by either party at any time for any reason."); *Scott v. Extracorporeal, Inc.*, 545 A.2d 334, 336 (Pa. Super. Ct. 1988) (holding employee at-will may be terminated for any reason *or no reason*) (citation omitted) (emphasis added). Notably, "when a contract lapses, but the parties to the contract continue to act as if they are performing under the contract, the material terms of the

prior contract will survive intact unless either one of the parties clearly and manifestly indicates. . . that it no longer wishes to continue to be bound thereby. . . ." *Luden's Inc. v. Local Union No. 6 of the Bakery, Confectionery and Tobacco Workers' Intern. Union of America*, 28 F.3d 347, 355 (3d Cir. 1994).

"A breach of contract is a non-performance of any contractual duty of immediate performance." *Camenisch v. Allen*, 44 A.2d 309 (Pa. Super. Ct. 1945). In order to establish a claim for breach of an employment contract in Pennsylvania, a plaintiff must prove: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. Ct. 2005) (citing *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002)).

Here, Plaintiff alleges that Defendant breached the 1995 Contract when it "notified Plaintiff by correspondence dated October 1, 2014 that he will have been determined to have resigned employment by failing to agree to the terms and conditions of the Representative Agreement." Pl. Am. C. at 5. Plaintiff further argues that Defendant breached the 1995 Contract by notifying him in the October letter of that contract's termination effective December 31, 2014, and by immediately terminating his employment on December 4, 2014. *Id.*

The Court finds that these arguments, with all of Plaintiff's factual allegations accepted as true, and viewed in a light most favorable to Plaintiff, do not state a valid claim for breach of contract. The 1995 Contract clearly states that Defendant was entitled to terminate Plaintiff's employment for any lawful reason, so long as it provided seven (7) days' notice of that termination. *See* Pl. Am. C. at 10 ¶ 5. It is clear from Plaintiff's own representation of the facts that Plaintiff received far more than seven days' notice that his employment under the 1995

9

Contract would be terminated if he failed to return the signed Representative Agreement by December 1, 2014 – or in any case on December 31, 2014 regardless of whether he signed and returned the new Representative Agreement.[3] If the 1995 Contract was still in effect at the time Plaintiff was terminated, it is clear that Defendant did not breach that agreement. Count I of Plaintiff's Amended Complaint is therefore dismissed.

### b. The Representative Agreement

Plaintiff submits two inconsistent arguments regarding the 2014 Representative Agreement. First, as part of Plaintiff's claim for breach of the 1995 Contract, he argues that the 2014 Representative Agreement was not "supported by good and valuable consideration in that it provides no benefit to Plaintiff" by declaring him an employee-at-will, and by requiring that he relinquishes "certain legal rights contained in the original Employment Agreement entered between the parties." Pl. Am. C. at 5. Plaintiff essentially submits that the 2014 Representative Agreement was not a new employment contract, but rather merely a collection of non-disclosure and non-compete-type agreements to supplement the 1995 Contract, the consideration for which was only Plaintiff's continued employment. In the alternative, Plaintiff contends that the 2014 Representative Agreement is valid and that Zep breached it by failing to acknowledge his acceptance of that contract, and terminating him. Neither contention is persuasive.

Plaintiff's first argument is misplaced. It is true that under Pennsylvania law, continued employment alone is generally not valid consideration for a non-disclosure or non-compete agreement; Pennsylvania law requires something more. *Maintenance Specialties, Inc. v. Gottus*,

---

[3] Even accepting as true that Plaintiff returned the 2014 Representative Agreement before December 1, 2014, he still would not have stated a claim for breach of the 1995 contract. After Plaintiff accepted the terms of the Representative Agreement, those terms, including the "Employment at Will" term, would supersede those of the 1995 Contract. *See* Pl. Amend. C. at 19 ¶ 10; *See also Chanoff v. Fiala*, 271 A.2d 285, 287 (Pa. 1970) (holding that acceptance is valid immediately upon delivery) (citing Restatement (First) Contracts § 66 (1932)).

314 A.2d 279, 281 (Pa. 1974) ("in other words, a restrictive covenant is enforceable if supported by new consideration, either in the form of an initial employment contract or a change in the conditions of employment"). It is also true that under Georgia law, which governs the terms of the 2014 Representative Agreement, continued employment is not valid consideration for a non-disclosure or non-compete-type agreement for a non-at-will employee. *See Glisson v. Global Sec. Servs., LLC*, 653 S.E.2d 85, 87 (Ga. App. 2007). However, assuming *ad arguendo* that the 2014 Representative Agreement was not a new employment contract, then the 1995 Contract was still in effect. As explained above, the October 1 letter gave Plaintiff significantly more than the required seven days' notice of termination under the 1995 Contract. Under the terms of the 1995 Contract Plaintiff could be terminated for any reason, so long as Defendant provided seven days' notice of such termination.

Plaintiff's alternative theory is equally unavailing. In the second count of the Amended Complaint, Plaintiff avers that Defendant breached the Representative Agreement "it entered with Plaintiff when it notified Plaintiff by correspondence dated December 4, 2014 that he was being released immediately for failing to return the signed Representative Agreement" when in actuality, he did sign and return it on November 20, 2014. *Pl. Am. C. at 5. P*laintiff contends he suffered damages as a result of Defendant's alleged breach through lost salary, commissions and other benefits. *Id.* Plaintiff argues in Count II that he accepted the Representative Agreement and that Defendant breached the terms of that agreement.

Assuming Plaintiff did accept the 2014 Representative Agreement, that agreement indicates that it should be governed by Georgia law. Pl. Am. C. at 19 ¶ 8. Under Georgia law, a breach of contract claim has three elements: "the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Canton Plaza, Inc. v.*

11

*Regions Bank, Inc.*, 732 S.E.2d 449 (Ga. Ct. App. 2012). The Court concludes that given the facts as pled by Plaintiff, there was no breach of any duty that arose under the Representative Agreement. That agreement provided for employment at-will, and under Georgia law, "at-will employees can be terminated for any or no reason. . . ." *Reid v. City of Albany*, 622 S.E.2d 875, 877 (Ga. Ct. App. 2000). Defendant was entitled to terminate Plaintiff's employment simply because it did not receive Plaintiff's signed and accepted Representative Agreement, regardless of whether Plaintiff actually sent it on November 20, 2014 or not. Indeed, because Plaintiff was an at-will employee under the Representative Agreement, even if Defendant had received the signed copy of that agreement, as requested, it still could have terminated Plaintiff for no reason at all. *See Id.* Thus, Count II must be dismissed.

   2.     **Wrongful Termination Claims**

Plaintiff additionally brings a claim for wrongful termination against Defendant for having breached either the 1995 Contract or the Representative Agreement.

Under Pennsylvania law, which governs the 1995 Contract, "it is well settled that the tort of wrongful discharge is available only where there is an employment at-will relationship." *H & R Block Eastern Tax Services, Inc. v. Zarilla,* 69 A.3d 246, 252 (Pa. Super. Ct. 2013) (citing *Weaver v. Harpster*, 975 A.2d 555, 557 n. 3 (Pa. 2009)). Under the 1995 Contract, Plaintiff could only be terminated with seven days' notice, unless that termination was for cause. Under *Ludens*, if Plaintiff was still employed under the 1995 Contract when he was terminated in 2014, the terms of that agreement would still govern even though the 1995 Contract indicated a one-year

duration. 28 F.3d at 355. Therefore, under this theory, Plaintiff was not an at-will employee in 2014 and his wrongful termination claim under the 1995 Contract fails as a matter of law.[4]

Regarding the 2014 Representative Agreement, Georgia law governs, and if Plaintiff accepted that agreement, he would have been an at-will employee. *See* Pl. Am. C. at 19 ¶¶ 7, 8. In Georgia, wrongful termination is a tortious act growing out of the breach of an employment contract. *Mr. B's Oil Co., Inc. v. Register*, 351 S.E.2d 533, 534 (Ga. Ct. App. 1986). However, where a plaintiff's employment was at-will, there can be no valid claim for wrongful termination in Georgia. *Id.* While in Pennsylvania there exists a very limited exception to that general rule for terminations in violation of public policy, no such exception exists under the laws of Georgia. *Compare McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283 (Pa. 2000) (holding at-will employee may bring wrongful termination claim if public policy of Pennsylvania is implicated, undermined, or violated); *and Weaver*, 975 A.2d at 564 (explaining the limited nature of this public policy exception) *with Mr. B's*, 351 S.E.2d at 535 (recognizing that this "more enlightened view" does not exist in Georgia) (Benham, J. concurring in part and dissenting in part). In any event, Plaintiff has failed to allege that Zep did anything "wrongful" or in violation of public policy. Accordingly, this wrongful termination claim also fails as a matter of law.

---

[4] The Court acknowledges Plaintiff's claim that a different contract existed between 1996 and 2014; however, Plaintiff has not alleged that his employment under that Exclusive Account Contract was at-will, nor has Plaintiff presented any of the terms of that contract. But, even if Plaintiff's employment was at-will under that contract, Plaintiff has not presented anything indicating that his termination was wrongful or inconsistent with a "clear mandate of [the] public policy" of Pennsylvania. *See Weaver v. Harpster*, 975 A.2d 555, 564 (Pa. 2009). If Plaintiff's employment was at-will, Defendant could terminate him for any lawful reason, or no reason at all; if it was not at-will, there can be no wrongful termination claim.

### 3. Breach of the Exclusive Account Contract

In his Response to Defendant's Motion to Dismiss the Amended Complaint, Plaintiff – for the first time – alleged the existence of a contract which was entered into after the 1995 Contract, but before the 2014 Representative Agreement. Plaintiff alleged that Defendant breached that contract, but was unable to aver any of its terms. Indeed, Plaintiff admits he was never given a copy of this alleged contract and that its terms and conditions "are unknown." Pl. Res. at 12. In order to state a claim for breach of contract, a plaintiff must allege the existence of a contract **including its essential terms**. *Burlington Coat Factory of Pennsylvania, LLC v. Grace Const. Management Co., LLC*, 126 A.3d 1010, 1018 (Pa. Super. Ct. 2015) (citing *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002)) (emphasis added). Because Plaintiff has not pled the essential terms of the Exclusive Account Contract, he has failed to state a claim for its breach.

### IV. Leave to Amend

Once the Court has decided to dismiss a complaint it then determines whether that dismissal should be with or without prejudice. *See generally Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). District courts should grant a plaintiff leave to amend his complaint unless such an opportunity would be inequitable or futile. *Id.* Plaintiff has already had the opportunity to submit an amended complaint, as well as a response to Defendant's motion to dismiss the amended complaint. Through his pleadings, Plaintiff has presented the Court with at least three different contractual theories in an attempt to open the doors to discovery. His most recent theory asks this Court to postulate as to the application of the law to unknown terms of a mystery contract. Furthermore, the parties have engaged in lengthy proceedings regarding removal jurisdiction. For these reasons, the Court finds it would be inequitable and futile to grant

Plaintiff yet another bite at the apple, to prolong this case, and to require the expenditure of more resources by Defendant. Therefore, this case will be dismissed with prejudice.

## V.     Conclusion

For the reasons hereinabove stated, DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT will be **GRANTED**.

An appropriate order follows.

McVerry, S.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESTER LEVENSON,<br>  Plaintiff,<br><br>   v.<br><br>ZEP, INC.<br>  Defendant. | )<br>)<br>)<br>) 2:15-cv-01461-TFM<br>)<br>)<br>)<br>)<br>) |

## ORDER

**AND NOW**, this 2nd day of August, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that Defendant's MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF No. 17) is **GRANTED**. Plaintiff's Amended Complaint is therefore **DISMISSED WITH PREJUDICE**. The Clerk of Court shall docket this case closed.

BY THE COURT:

s/ Terrence F. McVerry
Senior United States District Judge

Cc:  Mark C. Stopperich, Esq.,
     Attorney for Plaintiff
     382 W. Chestnut St.
     Washington, PA 15301

     David J. Strauss,
     Brian D. Balonick,
     Attorneys for Defendant
     Buchanan Ingersoll & Rooney PC
     One Oxford Center
     301 Grant St. 20th Floor
     Pittsburgh, PA 15219